**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ESTATE OF JOSEPH MALECKI, ANNE MALECKI, ) ) | |
| Plaintiffs, ) | |
| v. ) ) | No. 10 C 5072 |
| ANHEUSER-BUSCH DEFERRED ) INCOME, STOCK PURCHASE AND ) SAVINGS PLAN, PLAN ADMINIS- ) TRATOR OF THE ANHEUSER- ) BUSCH DEFERRED INCOME, STOCK ) PURCHASE AND SAVINGS PLAN , ) | Blanche M. Manning |
| Defendants and ) Counterclaimants, ) | |
| v. ) ) | |
| ESTATE OF JOSEPH MALECKI; ) ANNE MALECKI, ) Counterclaim ) Defendants, ) ) and ) ) KRISTIN ROSE VILLA, ) Cross-claim ) Defendant. ) | |

## MEMORANDUM AND ORDER

      Joseph Malecki, an employee of Anheuser-Busch, was a participant in a company-sponsored retirement plan. Over the years, he filed two beneficiary designation forms with respect to this retirement account, one in 1987 and one in 1991. The 1987 form designated Kristin Rose Villa, Malecki's niece, as the beneficiary of his retirement account. The 1991 designation named his then-wife, Anne Malecki, as the primary beneficiary and Kristin as the contingent beneficiary. Anne Malecki and Joseph Malecki divorced in 2003 and Joseph Malecki died in July 2008. Upon his death, Anheuser-Busch received three claims for the funds in Malecki's retirement account: (1) from Malecki's Estate; (2) from Sophia, Malecki's daughter; and (3) from his ex-wife, Anne. Anheuser-Busch denied all of these and determined that Malecki's niece, Kristin Rose Villa, is entitled to the proceeds. The plaintiffs (the Estate and Anne Malecki) filed the instant lawsuit challenging Anheuser-Busch's decision. Kristin Rose Villa, the plaintiffs, and Anheuser-Busch have each moved for summary judgment on various counts.

For the reasons stated below, the plaintiffs' motion for summary judgment is granted in part and denied in part, Kristin Rose Villa's motion is denied, and Anheuser-Busch's motion is granted. Pursuant to the terms of the Plan, the Estate of Joseph Malecki is entitled to the funds at issue.

**Facts**

Joseph Malecki ("Malecki") is a former employee of Anheuser-Busch and participated in the Anheuser-Busch Deferred Income Stock Purchase and Savings Plan (the "Plan"). Plaintiff Anne Malecki ("Anne") is Malecki's ex-wife. The Defendant Plan is an employee pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(2). Anheuser-Busch established the Plan for the purpose of providing retirement benefits for employee plan participants and their beneficiaries. The Defendant Plan Administrator ("Anheuser-Busch") is the named administrator of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(A).

1987 beneficiary designation. Counter-defendant Kristin Rose Villa is Malecki's niece. Kristin was not originally a named party to this action, but has been joined as a counterdefendant. On January 8, 1987, as a participant in Anheuser-Busch's retirement Plan, Malecki completed a beneficiary designation that named Kristin as the primary beneficiary of the proceeds in his retirement account. He named a friend, a non-party, as the contingent beneficiary. At all relevant times, the Plan document states that each Participant shall specifically designate, by name, on forms provided by the Company, any beneficiaries and that the designation of a beneficiary may be changed or revoked without the consent of the beneficiary by the filing of a new beneficiary designation form.

1991 beneficiary designation. In January 1991, Malecki married Anne. On February 17, 1991, Malecki completed another beneficiary designation naming Anne as the primary beneficiary of the proceeds in his retirement account. He named Kristin as the contingent beneficiary. The 1991 beneficiary designation stated just above the signature line: "I hereby revoke any previous beneficiary designations I may have filed." At the time Malecki designated Anne as his primary beneficiary, the Plan did not provide that a beneficiary designation naming a spouse became ineffective if a participant named his spouse and was thereafter divorced. According to Anheuser-Busch, this divorce provision became effective on January 1, 1998.[1] The plaintiffs, however, assert that the Plan was not properly amended with the divorce provision until July 2000.

---

[1] The parties agree that the Plan has been amended and restated as of April 1, 1996 and August 1, 2001. The plaintiffs deny, as Anheuser-Busch asserts, that the Plan was restated on April 1, 2010, saying that they never received a copy of that revised Plan. Both the 1996 and 2001 versions of the Plan provide that Anheuser-Buch had the "absolute right to modify, amend or terminate this Plan in whole or in part, at any time . . . ."

Malecki terminated his employment with Anheuser-Busch in or around March 1993. He did not complete another beneficiary designation. On January 2, 2003, Malecki and Anne divorced and he never remarried.

Malecki died on July 26, 2008. At the time of his death, Malecki was entitled to benefits under the Plan.

On October 28, 2008, while addressing issues of the Estate, representatives from U.S. Bank received a proxy indicating that Malecki owned over 4,000 shares of stock in Anheuser-Busch worth at that time over $200,000. Representatives of Sophia Malecki sent a claim for the money on December 4, 2008, which Anheuser-Busch denied on February 6, 2008. Sophia had 60 days to appeal the decision, but did not do so.

<u>Claims by the Estate and Anne</u>. On November 12, 2008, the State of Wisconsin appointed Robert Villa ("Mr. Villa"), Malecki's nephew, the executor and personal representative of Malecki's estate with all general powers and duties. On March 13, 2009, Mr. Villa informed Anheuser-Busch of his appointment and, as the court-appointed representative of Mr. Malecki's estate, requested "as much information as possible." He followed-up with a request on March 31, 2009, asking for the "complete plan documents." Anheuser-Busch produced to Mr. Villa the beneficiary designations, the Plan documents and all amendments thereto.[2]

On April 2, 2009, Mr. Villa submitted a formal claim to Anheuser-Busch on behalf of the Estate of Joseph J. Malecki. The same day, on April 2, 2009, then-counsel for Anne Malecki, Julia Santullano, wrote a letter to Anheuser-Busch enclosing a formal claim by Anne.

On April 8, 2009, the attorneys of Martin & Bonnett P.L.L.C. sent a letter to Anheuser-Busch in which it advised the plan administrator the firm had been recently retained to represent the Estate. Martin & Bonnett asked that Anheuser-Busch provide the Estate with 45 days to review plan documents and supplement its claim. It also requested that Anheuser-Busch produce certain documents.

On May 8, 2009, Anheuser-Busch sent three different communications to the parties involved. In the first communication, Anheuser-Busch notified Mr. Villa that it had received the claim for benefits he had submitted on behalf of the Estate. The letter also indicated that Anheuser-Busch had also been contacted by Susan Martin of Martin & Bonnett, who indicated that she had been retained as counsel to the Estate. Anheuser-Busch informed Mr. Villa that on April 8, 2009, Martin had requested certain plan documents and asked that the Plan

---

[2] The parties are in significant disagreement over which Plan documents were provided to the plaintiffs. The court has briefly outlined the facts relating to the document dispute, but notes that these facts are not relevant to the merits of who is the proper beneficiary of Malecki's retirement account.

defer ruling on Estate's claim until she had time to review the documents and submit supplemental information. Therefore, Anheuser-Busch indicated in its May 8, 2009, letter that it expected to make a determination within 45 days after receiving the supplemental arguments from Martin but "in no event later than 180 days after receipt of your claim."

Anheuser-Busch also sent an e-mail to Susan Martin on May 8, 2009, and enclosed "the Plan document and all amendments for the Anheuser-Busch Deferred Income Stock Purchase and Savings Plan (401(k) Plan)," as Martin & Bonnett requested in its letter of April 8, 2009. The plaintiffs deny that Susan Martin received that email or the attachments thereto.

Finally, in the third communication of May 8, 2009, Anheuser-Busch issued a letter to counsel for Anne denying Anne's claim. Anheuser Busch provided an explanation, with citations to relevant Plan provisions and a copy of Article XVI of the Plan, which Anheuser-Busch relied upon when making its determination. The denial letter stated that Anne or her representative "may file an appeal and request a review by the [Plan] Committee not later than 60 days after receipt of this letter." The plaintiffs note that the excerpt of Article XVI that Anheuser-Busch enclosed with the denial letter was undated.

On May 28, 2009, Anheuser-Busch sent to Martin & Bonnett, the Estate's counsel, information that it had requested regarding the Estate's claim and Malecki's beneficiaries. In that e-mail, Nancy Diebold of Anheuser Busch stated that other information the Estate had sought had been sent previously and that "[t]his should be the last request that needs to be sent to you." A representative of Martin & Bonnett responded that this was the first information that Anheuser-Busch had sent regarding Martin & Bonnett's April 8, 2009, request. The plaintiffs admit that Anheuser-Busch sent the front and back of the beneficiary designation forms by email dated May 28, 2009, but contend that no other documents or information were provided to them.

On June 1, 2009, Anheuser-Busch contends that it resent to Susan Martin the e-mail of May 8, 2009, and that Anheuser-Busch made an additional production of documents on June 12, 2009. While the plaintiffs deny that they ever received an email dated May 8, 2009, or the attachments thereto, it is not clear whether they received the June 1, 2009, e-mail. The plaintiffs further state that they received an email dated June 8, 2009, attaching the Plan document as Amended and Restated as of August 1, 2001, and amendments thereto. The plaintiffs state that on June 12, 2009, they received the latest Summary Plan Description, the 2008 Summary Plan Description and the December 2004 Summary Plan Description. The plaintiffs also state that on June 12, 2009, Anheuser Busch provided Malecki's 401(k) statements through December 2004.

On June 18, 2009, Martin & Bonnett submitted to Anheuser-Busch a supplement to the claim on behalf of the Estate.

On July 7, 2009, Anne wrote a letter to Anheuser-Busch in which she acknowledged the denial of her claim but requested that Anheuser-Busch provide her with Plan documents she had previously requested and defer deciding her original claim until she had time to supplement her claim after she had received the documents she requested.

On August 19, 2009, Anheuser-Busch pulled together all of the superseded plans and summary plan descriptions for Susan Martin, attorney for the Estate. They were provided to Susan Martin on October 1, 2009.

On November 13, 2009, Martin & Bonnett wrote another letter to Anheuser-Busch, this time stating that it represented *both* Anne Malecki and the Estate. The letter expressly represented that "[Anne] Malecki has not received any response to her claim." The letter did not reference an appeal and did not indicate that Anne's claim had been denied. Nevertheless, the plaintiffs contend that the letter sought to supplement Anne's appeal because it explicitly references Anne's July 7, 2009, letter in which Anne stated: "I request that the Plan Administrator review my claim…" and asked for time to supplement her claim. The November 13, 2009, letter also supplemented the Estate's claim.

On January 28, 2010, Anheuser-Busch denied the Estate's claim. With respect to any argument on behalf of Anne, Anheuser-Busch stated: "[A] claim on behalf of Anne Malecki was previously denied and a copy of the letter denying that claim is enclosed." In its letter, Anheuser Busch offered an explanation for the denial, with citations to relevant Plan provisions, and an undated copy of Article XVI of the Plan, which Anheuser-Busch relied upon when making its determination. The January 28, 2010, letter states : "If you disagree with this decision, your or your representative may file an appeal and request a review by the Stock Plans Appeals Committee not later than 60 days after receipt of this letter."

On February 4, 2010, Martin & Bonnett sent an e-mail to Anheuser-Busch stating that although Anheuser Busch had left a message with Martin & Bonnett on January 28, 2010, advising that Anheuser-Busch was sending a letter responding to the Estate and Anne Malecki's claim, Martin & Bonnett had not received the letter. Martin & Bonnett asked that Anheuser Busch e-mail the letter to them.

On April 2, 2010, Martin & Bonnett appealed Anheuser-Busch's decision denying the Estate's claim. In the same letter, Martin & Bonnett, now acting also on behalf of Anne, asserted that Anne had submitted an appeal on July 7, 2009, which she supplemented on November 13, 2009, and contended that Anne's appeal was never ruled on by Anheuser-Busch. Regardless of the dispute about whether Anne had appealed on July 7, 2009, Anheuser-Busch has admitted that the plaintiffs exhausted their administrative remedies. It has also admitted that Anne requested that the Plan review the denial of her claim for benefits, and that the letters dated November 13, 2009, and April 2, 2010, supplemented Anne's appeal.

On June 15, 2010, Martin & Bonnett inquired as to the status of the Estate's appeal. Anheuser-Busch notified Martin & Bonnett on July 20, 2010 that the appeal letter was sent to Anheuser-Busch's appeals committee for review and decision.

A few weeks later, on August 12, 2010, before receiving Anheuser-Busch's decision on the appeals, Anne and the Estate initiated this action. The plaintiffs do not dispute this statement

but note in response that the deadline to decide the appeals had long since passed. *See* 29 C.F.R. § 2560.503-1 ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

Relevant plan provisions. Section 19.4 of the Plan states:

> The Committee shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any individual to participate in and receive benefits under the Plan. The decision of the Committee on any claim, in accordance with the claim procedures set forth in Section 19.5 below, shall be final and conclusive and shall not be subject to further review.

Section 16.1(c) of the Plan states in part:

> If a Participant designates the Participant's spouse as Beneficiary and thereafter is divorced from such spouse, such designation shall be of no force or effect as of the date of such divorce.

The plaintiffs admit that the Plan as Amended and Restated as of August 1, 2001, contains § 16.1(c) as quoted above, but assert that the quoted provision was the result of an amendment adopted in or around July 2000, more than nine years after Mr. Malecki validly designated Anne Malecki as his primary beneficiary and approximately seven years after Mr. Malecki's termination of employment.

Section 16.1(c) goes on to state:

> In determining any question concerning a Participant's beneficiary, the latest designation filed with the Company shall control and intervening changes in circumstances shall be ignored, except as otherwise provided in this subsection (c).

The pertinent portion of the referenced subsection (c) set forth above provides in full:

> (c) If (i) no such designation is on file with the Company at the time of the Participant's death, or (ii) if a designation on file is not valid, based upon the Participant's marital status on the Participant's date of death, the Participant's surviving spouse (if the Participant is married at the time of the Participant's death) or the Participant's estate (if it is established to the satisfaction of the Company that the Participant is not then married) shall be conclusively deemed to be the Beneficiary designated to receive any amounts distributable under this

Plan. In determining any question concerning a Participant's beneficiary, the latest designation filed with the Company shall control and intervening changes in circumstances shall be ignored, except as otherwise provided in this subsection (c).

Immediately thereafter, the Plan included a written example which said:

By way of example, if a Participant at any time files a beneficiary designation which . . . becomes ineffective for any period of time . . . and such [Participant's] marital status or other circumstances change so that, on the date of death such designation would be effective, such designation shall be controlling notwithstanding any intervening period of ineffectiveness.

The plaintiffs do not deny that the provision is properly quoted, but state that both this provision and the first sentence of § 16(c) predated the last part of § 16(c), which was amended to invalidate a beneficiary designation on the date of a divorce with certain exceptions. In addition, the plaintiff notes that §16.1(a) states that the filing of a new beneficiary designation "automatically revokes" any forms previously filed with the company.

The parties dispute whether Malecki was ever provided all of the summary plan descriptions with the amendments.

**Analysis**

Kristin and Anheuser-Busch have each filed motions for summary judgment contending that, under the arbitrary and capricious standard of review, the Plan's decision that Kristin is entitled to the funds was correct and should be upheld. The plaintiffs (Anne and the Estate, whose interests are apparently aligned and who have sued jointly) also move for summary judgment on the ground that the Plan's determination should be reviewed *de novo*, its interpretation of the Plan is incorrect, and that the Estate, or in the alternative, Anne, is the proper beneficiary.

    A.    <u>Anne's Exhaustion of Administrative Remedies</u>

Kristin first argues that Anne failed to exhaust her administrative remedies. *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011) ("because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute"). Anheuser-Busch notified Anne on May 8, 2009, that it was denying her claim and indicated that she could file an appeal and request a review of the denial no later than 60 days after receipt of the letter. Anne sent a letter to Anheuser-Busch on July 7, 2009, within the 60-day period acknowledging the denial but asking for additional documents and requesting that Anheuser-Busch defer ruling on her original claim until she could

Page 7

supplement it.

Although Anheuser Busch concedes that Anne's remedies were exhausted, Kristin asserts that the July 7 letter was not an appeal and thus contends that Anne's suit is barred because she did not exhaust her administrative remedies. This court disagrees. As noted by the Seventh Circuit, exhaustion "encourages informal, non-judicial resolution of disputes about employee benefits" and "helps to prepare the ground for litigation in case administrative dispute resolution proves unavailing." *Id.* at 360-61.

Here, it is clear that a full factual record has been developed. Moreover, the Plan admits that Anne has exhausted her administrative remedies; thus, to the extent that she has not exhausted, requiring her to go back and do so would serve no purpose. Accordingly, the court concludes that Anne exhausted her administrative remedies and, to the extent that she did not, that she be excused from doing so in this case. *Id*. at 361 (decision to require exhaustion within discretion of trial court and may not be necessary "where pursuing internal plan remedies would be futile.").

      B.    <u>Who is entitled to the retirement benefits?</u> (Count I)

          1.    *Standard of Review*

The court first must ascertain the standard of review to apply to the Plan administrator's decision. "The Supreme Court directs that 'a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case a deferential standard of review is appropriate." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 836-37 (7th Cir. 2012) (citation omitted). Specifically, where "the plan grants the administrator the discretion to determine eligibility and construe the plan terms, [the court] review[s] the administrator's decision under an arbitrary and capricious standard." *Weitzenkamp v. Unum Life Ins. Co. of America*, 661 F.3d 323, 329 (7th Cir. 2011). This standard requires a court to "ensure only that a plan administrator's decision 'has rational support in the record,'" *Edwards,* 639 F.3d at 360 (citation omitted), and is not "downright unreasonable." *Id*. (internal quotation marks and citation omitted).

Here, the Plan language provides that:

> The Committee shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any individual to participate in and receive benefits under the Plan. The decision of the Committee on any claim, in accordance with the claim procedures set forth in Section 19.5 below, shall be final and conclusive and shall not be subject to further review

Page 8

Section 19.4.

Despite this language, the plaintiffs assert that both the Plan documents and ERISA require *de novo* review because of the Plan's failure to follow express procedures. With respect to the Plan documents, the plaintiffs contend that the last sentence of Section 19.4 conditions deference on the Committee's compliance with the claim procedures set forth in Section 19.5. Because, the plaintiffs argue, the Committee violated the procedures in Section 19.5, no deference should be accorded to its decision. Specifically, the plaintiffs assert that Anheuser-Busch failed to issue any determination on its review on appeal and failed to provide relevant documents that were requested prior to and following the initial denial of the claims. The plaintiffs further note that the Plan and the Summary Plan Description in effect at the time of Malecki's death states that the "decision on review" will be final and non-reviewable unless a court determines it is arbitrary and capricious. Here, the plaintiffs' note, no decision on appeal was provided by the Plan and therefore, no decision exists to which the court can defer.

The plaintiffs also contend that ERISA forecloses deferential review. Briefly, the plaintiffs contend that ERISA requires every pension benefit plan to provide a "full and fair" review of the denial of a claim for benefits "by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133, ERISA § 503. By not issuing a decision on the plaintiffs' appeals as ERISA requires, the plaintiffs assert that the Plan's initial denial is not entitled to deference. In support, they point to 29 C.F.R. § 2560.503-1(l), which states that

> Failure to establish and follow reasonable claims procedures. In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l).

The Department of Labor has interpreted the above regulation as follows:

> The proposal contained a provision setting forth the Department's view of the consequences that ensue when a plan fails to provide procedures that meet the requirements of section 503 as set forth in regulations. The proposal stated that if a plan fails to provide processes that meet the regulatory minimum standards, the claimant is deemed to have exhausted the available administrative remedies and is free to pursue the remedies available under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. The Department's intentions in including this provision in the proposal *were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the*

> *absence of the mandated procedural protections should not be entitled to any judicial deference.*

Pension and Welfare Benefits Administration, 65 Fed. Reg. 70246–01, 70255 (Nov. 21, 2000) (emphasis added).

As discussed by the plaintiffs, a number of courts have concluded that *de novo* review is appropriate when the administrator fails to abide by the procedural protections provided for in the Plan or ERISA. *See, e.g.*, *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 109 (2d Cir. 2005) (under prior version of regulation, in which failure to issue final determination on appeal resulted in the claim being "deemed denied," finding that court may only give deferential review to actual exercises of discretion and a "deemed denial" was not an exercise of discretion but was a determination by operation of law); *Jebian v. Hewlett-Packard Co.,* 349 F.3d 1098, 1105 (9th Cir. 2003) ("[W]e will not defer when a decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion"); *Gilberston v. Allied Signal*, *Inc.*, 328 F.3d 625, 632 (10th Cir. 2003) (also under prior version of regulation, holding that "when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial de novo, even if the plan administrator has discretionary authority to decide claims")[3]; *Roach v. Kaiser Permanente Long Term Disability Plan*, 2009 WL 1357394, at *7 (C.D. Cal. May 12, 2009) ("MetLife failed to take any action on Plaintiff's appeal, and thus failed to exercise its discretionary authority under the Plan. Accordingly, the Court finds that *de novo* review is the appropriate standard of review."); *Reeves v. Unum Life Ins. Co. Of Am.*, 376 F. Supp.2d 1285 (W.D. Okla. 2005) (concluding that the substantial compliance doctrine did not apply to the Plan's failure to issue a decision on appeal or timely request an extension and that due to these failures, the appropriate standard of review was *de novo*).

Other courts, however, have concluded that procedural irregularities do not require that the plan administrator's decision be reviewed *de novo*. *Gatti v. Reliance Standard Life Ins. Co.,* 415 F.3d 978 (9th Cir. 2005) (distinguishing *Jebian* on ground that time limitation for ruling on appeals in that case was contained in the Plan versus the ERISA regulations); *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) (under the prior version of the regulation, stating that

---

[3] In a more recent case, the Tenth Circuit has also declined to use the more onerous *de novo* review where the claimant failed to present either meaningful new evidence or significant new issues on administrative appeal. *Finley v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 379 F.3d 1168, 1174-75 (10th Cir. 2004). But, without overruling *Finley*, the Tenth Circuit has subsequently indicated its disagreement with the *Finley* decision stating that "[w]e are reluctant to extend *Finley* because ERISA recognizes the value of an administrator's timely second look at a claim on administrative appeal, even if no new facts or legal arguments are advanced." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent*, 605 F.3d 789, 799 n.6 (10th Cir. 2010). *See also Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) (applying *de novo* review where Plan failed to issue decision on appeal).

Page 10

"[w]hen a review body fails to act and the claim is deemed denied on review, '[a] claimant's appropriate recourse is then to seek review of the denial by the district court.' ... However, the standard of review is no different whether the appeal is actually denied or is deemed denied.").[4] *Westerheide v. Hartford Life Ins. Co.,* 10–cv–471–MJR–PMF, 2011 WL 4383164, at *3 (S.D. Ill., Sep. 20, 2011) ("[T]his Court does not perceive that the Court of Appeals for the Seventh Circuit would alter the standard of review, even if there were a flagrant failure to provide mandated procedures"); *Wertheim v. Hartford Life Ins. Co.*, 268 F. Supp.2d 643, 664 (E.D. Va. 2003) ("'To apply the non-deferential, *de novo* standard of review solely because of a procedural irregularity is an extreme measure,' warranted neither by the facts nor the settled law of ERISA.") (citation omitted).

In another interpretation, the Eighth Circuit has concluded that the less deferential standard of review could apply if the claimant can show both a procedural irregularity and a "serious breach" of the plan administrator's fiduciary duty. *Mohlke v. Metropolitan Life Ins. Co.*, 2012 WL 642554, at *7 (E.D. Ark. Feb. 28, 2012) ("Even if the plan or policy grants discretion, however, the Eighth Circuit has held that a less deferential standard of review is warranted if a plaintiff can provide material, probative evidence to demonstrate 'that: (1) ... a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty....'") (citation omitted). While Anheuser Busch characterizes the Seventh Circuit as having "cited with approval the standard adopted by the Eighth Circuit," this court disagrees. In *Pakovich v. Broadspire Services, Inc.,* 535 F.3d 601 (7th Cir. 2008), the Seventh Circuit did indeed quote the Eighth Circuit rule that when the Plan fails to issue a ruling on appeal, the initial decision will be reviewed *de novo* "if the review panel's inaction raises serious doubts about the administrator's decision." *Pakovich,* 535 F.3d at 606-07. However, the *Pakovich* court expressly excluded this principle from the rule it was adopting. The *Pakovich* court stated that it was "adopt[ing] the *first* part of the Eighth Circuit's rule for this Court, holding that when the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator to address the issue in the first instance." *Id.* (emphasis added).

Nor does the concept of substantial compliance save Anheuser-Busch. The court cannot see how one "substantially complies" with a deadline–one either meets it or not. Perhaps a *de minimus* delay could be deemed to constitute substantial compliance, but that is not what happened here. No decision on appeal was issued. Therefore, the doctrine of substantial compliance does not apply in the instant case. Moreover, the Seventh Circuit has stated that it "decline[s] to import the substantial compliance doctrine into the matter of administrative deadlines under ERISA." *Edwards,* 639 F.3d at 363. While *Edwards* dealt with a claimant's failure to file a timely appeal with the plan, the court sees no reason that the conclusion should not also apply to a plan's failure to meet a deadline.

---

[4] The Sixth Circuit has, however, acknowledged the opposing point of view. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000) ("[T]here is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner.").

The Seventh Circuit has not expressly ruled on the issue of which standard of review to apply when a plan commits procedural errors in ruling on a claim.[5] For several reasons, the court agrees with those courts that have held that the failure to issue a decision on appeal means that the plan has not exercised its discretion and therefore, its decision is not entitled to deference. First, the court notes the DOL commentary on the regulation, which indicates that when procedural protections are not followed then the plan's decisions are not entitled to judicial deference. "[P]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *U.S. v. Raupp*, --- F.3d ----, 2012 WL 1229368, at *8 (7th Cir. Apr. 12, 2012) (citations omitted) (dissenting opinion).

Moreover, given the principles behind exhaustion, including the informal non-judicial resolution of disputes and the development of a full factual record should the case end up in court, this court finds that using a *de novo* standard of review in such circumstances will provide incentive to plan administrators to ensure that claims are fully and properly considered on their part. Finally, this approach seems only fair given that a claimant's failure to file a timely request for review with a plan can foreclose judicial review. *Edwards,* 639 F.3d at 362 (plan was within its rights to enforce deadline for filing an appeal with respect to claimant where the plan had a clear deadline of 180 days for filing administrative appeals from denials of benefits and the claimant never offered explanation for untimeliness of the appeal). For these reasons, the court will use a *de novo* standard of review in this case.

2. *Who is entitled to the benefits*?

Anheuser-Busch contends that its interpretation of the Plan should be upheld under either standard of review. For the reasons stated above, the court reviews the Plan's determination *de novo*. The parties agree that the terms of the Plan control who is entitled to receive the benefits at issue. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) (plan

---

[5] Recently, in a footnote in *Weitzenkamp v. Unum Life Ins. Co. of America*, 661 F.3d 323, 329 n.3 (7th Cir. 2011), the Seventh Circuit noted that:

> Weitzenkamp, in her reply brief, argues that a *de novo* standard should apply to our review because of certain perceived procedural errors Unum committed in processing her claim. She cites to no law supporting this position, however. These alleged procedural violations do not mandate a different standard of review but instead will be considered as factors in determining whether Unum's decision to discontinue benefits was arbitrary and capricious.

*Id.* (citation omitted). However, given Weitzenkamp's failure to identify the procedural errors and the lack of discussion of any caselaw whatsoever, the court declines to find this brief discussion of the issue to be precedential.

Page 12

administrator is required to make benefit determinations "in accordance with the documents and instruments governing the plan") (citation omitted).

According to Anheuser-Busch, Section 16.1(c) of the Plan is decisive. That section states that

> [i]f a Participant designates the Participant's spouse as Beneficiary and thereafter is divorced from such spouse, such designation shall be of no force or effect as of the date of such divorce.

Section 16.1(c) also provides in pertinent part that:

> (c) If (i) no such designation is on file with the Company at the time of the Participant's death, or (ii) if a designation on file is not valid, based upon the Participant's marital status on the Participant's date of death, the Participant's surviving spouse (if the Participant is married at the time of the Participant's death) or the Participant's estate (if it is established to the satisfaction of the Company that the Participant is not then married) shall be conclusively deemed to be the Beneficiary designated to receive any amounts distributable under this Plan. In determining any question concerning a Participant's beneficiary, the latest designation filed with the Company shall control and intervening changes in circumstances shall be ignored, except as otherwise provided in this subsection (c).

Immediately following this language, the Plan includes a written example which states:

> By way of example, if a Participant at any time files a beneficiary designation which . . . becomes ineffective for any period of time . . . and such [Participant's] marital status or other circumstances change so that, on the date of death such designation would be effective, such designation shall be controlling notwithstanding any intervening period of ineffectiveness.

Under this provision, Anheuser-Busch argues that when Malecki and Anne divorced in 2003, Malecki's 1991 beneficiary designation of Anne became of no force and effect and the earlier 1987 designation of Kristin was revived and became effective.

However, the plaintiffs contend that one need not reach the second sentence of Section 16.1(c) because the first definitively states that if no beneficiary designation is on file with the company or is not valid at the time of the participant's death,

> based upon the Participant's marital status on the Participant's date of death, the Participant's surviving spouse (if the Participant is married at the time of the Participant's death) or the Participant's estate (if it is established to the satisfaction of the Company that the Participant is not then married) shall be conclusively

> deemed to be the Beneficiary designated to receive any amounts distributable under this Plan.

Thus, under the provision, the plaintiffs assert because Anheuser-Busch determined that the 1991 designation naming Anne was no longer effective due to the 2003 divorce, the Estate should be "conclusively deemed to be the Beneficiary designated to receive any amounts distributable under this Plan."

"[W]hen the *de novo* standard applies, a denial of benefits under an ERISA plan becomes essentially an ordinary contract dispute, albeit one in which federal common law rules of contract interpretation apply." *Hintz v. Prudential Ins. Co. of America*, 687 F. Supp.2d 772, 773 (N.D. Ill. 2009). Under these rules, "[p]lan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). In addition, "[a]ll language of a plan should be given effect without rendering any term superfluous." *Id*.

Here, giving the language of the text its plain and ordinary meaning, the Estate must be deemed to be the beneficiary. The first sentence of 16.1(c) describes exactly the situation at hand. The relevant portion reads as follows: "[I]f a designation on file is not valid, based upon the Participant's marital status on the Participant's date of death, the Participant's surviving spouse (if the Participant is married at the time of the Participant's death) or the Participant's Estate (if it is established to the satisfaction of the Company that the Participant is not then married) shall be conclusively deemed to be the Beneficiary designated to receive any amounts distributable under this Plan." The 1991 designation on file naming Anne Malecki was not valid at the time of Mr. Malecki's death because all parties agree that Anne and Mr. Malecki were divorced in 2003. *See* Section 16(c) (upon divorce, a designation naming the ex-spouse "shall be of no force or effect"). Therefore, because Malecki did not have a surviving spouse at the time of his death, the "Estate shall be conclusively deemed to be the Beneficiary designated to receive any amounts distributable under this Plan." The provision is straightforward and unambiguous.

Anheuser-Busch's reliance on the second sentence in Section 16(c), "[i]n determining any question concerning a Participant's beneficiary . . .," to conclude that Kristin is the proper beneficiary, is inapposite. Given the clear language of the first sentence, no "question" concerning Malecki's beneficiary exists and therefore, resorting to this sentence's language and the subsequent example is unnecessary.

Because the court concludes that the Estate is entitled to the retirement benefits at issue, the plaintiffs are granted summary judgment as to Count I. Kristin Rose Villa's motion for summary judgment as to this count is denied.

C. <u>Statutory Penalties for Alleged Failure to Provide Documents</u> (Count II)

Next, the plaintiffs assert that they are entitled to statutory penalties for Anheuser-

Page 14

Busch's purported failure to produce documents that they requested. Anheuser-Busch and the plaintiffs have each moved for summary judgment on this claim.

ERISA requires a plan administrator to provide certain documents to a participant or beneficiary upon request. 29 U.S.C § 1024(b)(4) ("The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary [] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."). However, "[t]he universe of documents that qualify as ones under which the plan is established or operated ... is small and is limited to those documents that formally, *i.e.*, legally, govern the establishment or operation of the plan." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 801 (7th Cir. 2009) (internal quotation marks omitted).

The plaintiffs do not specifically discuss in their memoranda the documents that they purportedly did not receive. Instead, they attach as Appendix 2 to their summary judgment memorandum a spreadsheet, Dkt. 88-3, which details their requests, how late they believe the responses were and the alleged resulting penalties. The problem with this approach is that when Anheuser-Busch refers to specific documents in its briefs, the plaintiffs' vague references in their response brief to "relevant Plan documents" and "SPDs" leaves the court unable to ascertain whether the parties are talking about the same documents.

For example, Anheuser-Busch contends that it "produced nearly every required Plan document to the Estate even before the Estate formally requested them . . . ." Defendants' Consolidated Memorandum, Dkt. # 94-1 at 22. It then asserts that it forwarded almost all of the requested documents in a timely fashion, and the one document that was inadvertently excluded, the 2008 SPD, was forwarded as soon as the error was realized. Anheuser-Busch then goes on to state that it, in good faith, then provided additional documents (which it contends were not required by ERISA) including: 401(k) financial statements relating to Malecki's benefits, portions of Malecki's claim file, and superseded versions of the Plan, SPDs and SMMs." *Id.* at 24. The plaintiffs admit that they received all of these documents on the dates that Anheuser-Busch asserts they were sent. But, in their appendix, the plaintiffs list six different categories (with no citations to the record) of documents that they contend they requested from the Estate but were provided late resulting in a purported penalty to the Estate of $52,250. The plaintiffs provide no specific discussion of these documents in their briefs and merely make vague references to documents that the Plan was "required to produce" and "relevant Plan documents." *See, e.g.*, Plaintiffs' Memorandum in Support of Summary Judgment, Dkt. #88-1, at 14; Plaintiffs' Reply, Dkt. #113-1, at 6. It is not this court's role to sift through the record in order to identify the factual basis for the plaintiffs' claim. Moreover, the plaintiffs' vague references to categories of documents fails to demonstrate that the documents they requested governed the "establishment or operation" of the Plan such that the Plan was obligated to produce them.

Moreover, Anheuser-Busch further contends that even assuming it failed to comply with its responsibilities, statutory penalties are not called for in this case. "Reviewing courts consider multiple factors to determine what size penalty, if any, is appropriate. . . . includ[ing]: prejudice to

Page 15

the participant caused by the delay, injury to the participant; the number of requests made by the participant; the administrator's bad faith or egregious conduct; the length of and explanation for the delay; the administrators' lack of resources to comply with the request; the nature of the documents withheld; and particular combinations of these factors." *Huss v. IBM Medical and Dental Plan*, 418 Fed. Appx. 498, 508-09 (7th Cir. 2011) (internal citations omitted). The plaintiffs touch only briefly on these factors and assert simply, with no citation to the record, that the delay was willful and they were prejudiced by the delay. But, once again, the lack of specificity dooms their claim. While they appear to base their request for sanctions on the Plan's failure to turn over numerous categories of documents, *see* Appendix 2 to Plaintiffs' Memorandum in Support of Summary Judgment, they fail to discuss what distinct prejudice resulted from the failure to receive any particular set of documents. The court is unwilling to impose sanctions on such a nebulous assertion of prejudice, especially in light of the plaintiffs' failure to discuss any of the other factors. Thus, even assuming that a violation of ERISA had occurred, the court, in its discretion, declines to impose sanctions.

The plaintiffs' motion for summary judgment as to Count II is denied and Anheuser-Busch's motion on this count is granted.

> C. <u>Equitable and Injunctive Relief</u> (Count III)

In Count III, the plaintiffs seek equitable and injunctive relief under 29 U.S.C. § 1133, ERISA § 503, for Anheuser-Busch's purported failure to abide by the Plan's and ERISA's claims procedures (*i.e.*, failing to issue a decision on appeal and failing to provide all of the documents provided by the plaintiffs). According to the plaintiffs, these failures deprived them of their right to a full and fair hearing as required under ERISA. Anheuser-Busch asserts that judgment should be entered against the plaintiffs on this count because the injunctive relief they seek here is duplicative of the relief sought in the other substantive counts and therefore "serves no useful purpose." The plaintiffs contend that "applying *de novo* review would be appropriate equitable relief here." Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment, Dkt. 105-1, at 15. Because the court concluded for the reasons stated above that *de novo* review of the Plan's determination is appropriate, the court need not impose the same relief under this separate count. Accordingly, Anheuser-Busch's motion for summary judgment as to Count III is granted and the plaintiffs' motion as to this count is denied.

> E. <u>Anne Malecki's alternative claims</u> (Counts IV and V)

The plaintiffs argue that, should the court conclude that the Estate is not entitled to the retirement benefits, in the alternative, Anne should be deemed to be the proper beneficiary. Specifically, they assert that the amendment to Section 16.1(c), which stated that in the event a participant designated a spouse as a beneficiary and then was later divorced from that spouse, such designation was no longer effective, was an improper retroactive reduction in Malecki's and Anne's benefits under ERISA § 204(g). They also contend that Anheuser-Busch breached its fiduciary duties by failing to notify Malecki that the terms of the Plan had changed, that Anne was no longer a valid beneficiary due to the divorce and that he therefore might need to file a new

Page 16

beneficiary designation form.

      Because the court has concluded that the Estate is the proper beneficiary, the court need not address these alternative arguments. The plaintiffs' request for relief under Counts IV and V is denied and judgment is entered in Anheuser-Busch's favor as to these counts.

**Conclusion**

      For the reasons stated above, the plaintiffs' motion for summary judgment [88-1] as to Count I is granted and denied as to Counts II, III, IV and V. Anheuser-Busch's motion for summary judgment as to Counts II, III, IV and V [93-1] is granted. Kristin Rose Villa's motion for summary judgment [90-1] is denied. All other pending motions are denied as moot. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**Entered:**

**Date**: June 5, 2012

                                                                _____
                                                                **Blanche M. Manning**
                                                                **United States District Judge**